58 So.2d 597

## CHERRY v. CHERRY.
### 4 Div. 667.

Supreme Court of Alabama.
April 17, 1952.

Rehearing Denied May 15, 1952.

———◆———

J. Hubert Farmer, Dothan, for appellant.

L. A. Farmer, Dothan, for appellee.

SIMPSON, Justice.

L. O. Cherry filed bill to redeem from a mortgage foreclosure against his brother, Dr. H. S. Cherry, who purchased at the foreclosure sale. From a decree allowing redemption Dr. Cherry has appealed.

The statutory period for redemption from the foreclosure had expired several years before the filing of the bill, but the appellee invoked the doctrine of estoppel to avert the operation of the two-year prescriptive terms of the statute.

The evidence was taken by depositions before a commissioner and under the rule we must sit in judgment on the facts without the aid of any presumption with respect to the finding below. Nevertheless, the trial court held to the opinion and conclusion that the bill was satisfactorily proven; that Dr. Cherry was estopped to plead the two-year statutory period for redemption and that a redemption be allowed. Concededly, decision of the question is not without difficulty, but on a careful study we have concluded to affirm that holding.

The facts on which relief was granted were substantially as follows: George Washington Cherry, father of the parties to this suit, died in 1930 seized and possessed of a valuable home place consisting of 214 acres near the city of Dothan, Alabama, leaving surviving him his widow, Missouri Cherry, and ten children. After the father's death, a family agreement was executed between the Cherry brothers and sisters whereby the Cherry homestead would be kept intact during Mrs. Cherry's lifetime for her use and benefit. Thereafter in 1936 appellee gave a $100 mortgage on his one-tenth undivided interest in the property to some third party; this fact became known to some members of the Cherry family and when it came to the attention of Dr. Cherry, he told appellee he was going to take up the mortgage and that appellee could have the land back upon the payment to him of what he had in it, including interest. The plaintiff testified Dr. Cherry told him substantially the same thing, not only before the mortgage was foreclosed but afterward, before his mother died. The mortgage was foreclosed in 1939 and bought in by Dr. Cherry. The fact of this understanding between appellant and appellee was corroborated by the testimony of a brother, who says he heard Dr. Cherry state less than a year before their mother died that if L. O. Cherry would pay him the principal and interest on the debt he could have his land back; by a sister, who testified Dr. Cherry told her substantially the same thing, and that he could have his interest back by paying the amount due at their mother's death. A brother-in-law of defendant also testified to substantially the same statement made by appellant, after the death of Mrs. Cherry, on the front porch of the Cherry homestead, to the effect that appellant did not want his brother's interest, for he, appellant, lived in Florida and if L. O. would pay him his money back he could have the land. Mrs. Cherry died in April, 1947, and thereafter appellee began steps to redeem the property and in September, 1947, filed the bill.

Dr. Cherry denied the statements attributed to him, but the lower court, viewing the entire situation, found in favor of the appellee, giving effect to the circumstance that there was undoubtedly a family agreement and purpose on the part of the children to keep the Cherry homestead intact for the use and benefit of the mother during her lifetime and that when it was learned that appellee had given a mortgage to some third party and that the integrity of the homestead might be imperiled, it was but natural that one of the children would come to the rescue and preserve that homestead for their mother and keep it in the Cherry family. As observed by the trial court, "the testimony of plaintiff and his witnesses fully substantiates the foregoing views. No witness, except the defendant, Dr. Cherry, seriously refutes them." Thereupon the court awarded a redemption

■279

on the ground that Dr. Cherry by his conduct had lulled his brother L. O. into a false sense of security by making him believe that time was not essential to redeeming his interest in the homestead property and that he might effect a redemption, even after his mother died.

■ The governing principle is well established. While generally an oral agreement to allow redemption from a mortgage foreclosure after the statutory period is not enforceable as within the statute of frauds, an agreement before the elapse of the two-year period of redemption to allow additional time to redeem after such elapse may be invoked if the mortgagee or purchaser at foreclosure by fraud or deception had lulled the party seeking to redeem into a false sense of security and thereby induced him not to redeem within said period—provided, of course, said redemptioner acts within a reasonable time, no time of performance being otherwise specified. Thompson v. Suttle, 244 Ala. 687, 15 So.2d 590.

■ Another pertinent principle, also, is that the mortgagee must do no affirmative act to mislead or deceive the mortgagor to his prejudice with respect to the foreclosure of the mortgage and although the recorded mortgage itself operates as notice of power to sell and any title acquired by purchaser thereunder, if the person holding under the recorded instrument does not remain merely passive, but does some affirmative act to mislead or deceive, he may be estopped to assert title against the mortgagor. Booth v. Parrish, 254 Ala. 304, 48 So.2d 212.

The Booth v. Parrish case, supra, quoted with approval an observation from Schroeder v. Young, 161 U.S. 334, 344, 16 S.Ct. 512, 516, 40 L.Ed. 721, which is particularly apposite to the facts in hand:

"Defendant relies mainly upon the fact that the statutory period of redemption was allowed to expire before this bill was filed, but the court below found in this connection that before the time had expired to redeem the property the plaintiff was told by the defendant * * * that he would not be pushed, that the statutory time to redeem would not be insisted upon; and that the plaintiff believed and relied upon such assurance. Under such circumstances the courts have held with great unanimity that the purchaser is estopped to insist upon the statutory period, notwithstanding the assurances were not in writing, and were made without consideration, upon the ground that the debtor was lulled into a false security."

■ In reaching the conclusion to affirm the holding of the trial court we, of course, cannot overlook the confidential relation shown to exist between the doctor and his brother; also the condition and station in life of the two parties, the doctor being the oldest child, some fifteen years older than appellee, and a successful and respected professional man, whereas, we gather from the evidence, his brother L. O. was a person of not too affluent circumstances and not possessed of the sagacity of his brother. That confidential relation and the relative positions of the two has a bearing on the case, we think, and undoubtedly led the trial court to believe that L. O., by reason of this relationship and the attendant circumstances, was led to his prejudice to fail to redeem within the statutory period and before his mother died and warranted him bringing the instant bill entitling him to redeem. Booth v. Parrish, supra, 254 Ala., 308, 48 So.2d 212. This conclusion in no way militates against our cases, Noel v. Noel, 225 Ala. 302(3), 143 So. 469; Abrams v. Abrams, 225 Ala. 622(7), 144 So. 828, that mere relationship as brothers does not per se create a confidential relation.

We are unwilling to pronounce error in the ruling below.

Affirmed.

LIVINGSTON, C. J., and FOSTER and LAWSON, JJ., concur.